IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMUEL HARRIS                           CV 06-1256-MA

       Plaintiff,                      OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

TIM WILBORN
Wilborn Law Office, P.C.
19093 S. Beavercreek Road, PMB # 314
Oregon City, OR 97045
(503)632-1120

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA 98104-7075
(206) 615-3621

        Attorneys for Defendant

MARSH, Judge.

    Plaintiff Samuel Harris seeks judicial review of the final
decision of the Commissioner denying his March 3, 2003,
applications for disability insurance and supplemental security
income benefits (benefits) under Titles II and XVI of the Social
Security Act, 42 U.S.C. §§ 401-33, 1281-83f.

    On the date of the Commissioner's final decision, plaintiff
was 52 years old.  He has a high school education and his past
relevant work is as a warehouse worker and forklift driver.

    Plaintiff alleges he has been disabled since October 1,
2001, based on a combination of impairments, including
degenerative disc disease, depression, carpal tunnel syndrome,
peripheral vascular disease, diabetes, diabetic neuropathy, and
sleep apnea.  Plaintiff's disability claim was denied initially
and on reconsideration.  The Administrative Law Judge (ALJ) held
a hearing on August 4, 2005, and thereafter issued a decision
that plaintiff was not disabled.  On June 30, 2006, the Appeals
Council denied plaintiff's request for review.  Therefore, the

ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.

For the following reasons, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this case for further proceedings as set forth below.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability.

At Step Two, the ALJ found plaintiff has the following severe impairments under 20 C.F.R. §404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities), including degenerative disc disease of the cervical

spine, diabetes, hypertension, sleep apnea, and depression.

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.

The ALJ found plaintiff has the residual functional capacity to lift and carry up to 20 lbs. occasionally and 10lbs frequently.  He can sit/stand/walk up to six hours in an eight-hour day, occasionally perform overhead work, push and pull with his upper extremities, and climb ladders, ropes, and scaffolds. He must avoid concentrated exposure to heat, humidity, hazards, unprotected heights, and moderate vibration.  Finally, he is limited to work involving one to three steps only.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work.

At Step Five, the ALJ found plaintiff is able to perform other work that exists in significant numbers in the regional and national economy, including the jobs of extruding machine operator and courier.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied his claim for benefits.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ (1) failed to give clear and convincing reasons for rejecting the disability opinion of treating physician, David Koon, M.D., (2) failed to give germane

reasons for rejecting the lay witness testimony of his fiancee regarding plaintiff's daily activities, (3) failed to include in the RFC and VE hypothetical any limitations arising from his peripheral vascular disease and depression, (4) improperly relied on VE testimony that conflicted with the Dictionary of occupational Titles (DOT), (5) erroneously found plaintiff could work as a courier, and (6) erroneously failed to find plaintiff's occupational base was eroded.

## LEGAL STANDARDS

### Burden of Proof.

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

**Plaintiff's Testimony.**

Plaintiff testified at hearings held in August 2005, and December 2005.

August 2005 Hearing.

At the first hearing, plaintiff testified his primary job was as a forklift operator, loading heavy material on a truck to be shipped.  He was required to lift by hand products weighing as much as 100 lbs.

In about 1999, plaintiff woke up with a pain in his neck, which continued for two years until one morning the pain was much worse.  By October 2001, when he stopped working, he was on so much medication that he would fall asleep at work.

Thereafter, plaintiff worked as a volunteer once or twice a year watching over schoolchildren in a classroom.  He also would volunteer to talk to individuals with problems once or twice a month.  He has been unable to do volunteer work since about August 2004.

Plaintiff becomes disoriented because of pain medications he takes.  He stated he has an aching pain from the lower back to the back of his neck that is constant.  It is the primary reason he stopped working.  He understands he has bulged discs at C4-6. He also has "long spurs" in his throat that cause him difficulty swallowing, and requires him to carry water with him to avoid

7 - OPINION AND ORDER

choking.  He has lost about 40 lbs because of this problem.  He states he has carpal tunnel syndrome in both hands that cause him difficulty holding objects and writing.  He has been told he will need an operation in the future.

<u>December 2005 Hearing</u>.

Plaintiff testified that since the hearing four months earlier, he cannot stand because his feet start hurting and, as a result, he is now able to walk only one block, whereas five months earlier he was walking five to ten miles during a 12 hour period on a daily basis.  His feet feel a little sore, his vision has progressively worsened, and his back hurts.  During the course of a week, plaintiff is "lucky if [he] gets two [] full days. . . .  No, I'll say one because it's hardly ever I got two full good days."  His doctors have told him these symptoms might be caused by diabetes.  He is unable to reach overhead because his hands swell.  When he drives, his feet may go numb and his legs ache.  He also has spells of dizziness.

For the last month, when he sits down his back hurts. He can lift about five lbs.  Family members do the heavy lifting around the house.  He lays down during the day for about six hours, mostly in the morning.

Plaintiff feels drowsy during the day.  He has sleep apnea, wears a mask at night, and sleeps at most two hours.

8 - OPINION AND ORDER

Plaintiff takes Neurontin to help him sleep at night, Cymbalta for depression, and OxyContin for pain.  He is also prescribed methadone.

Plaintiff was previously active in martial arts but stopped that activity when his disability began.

**Lay Witness Evidence**.

In November 2002 and April 2003, plaintiff's fiancee, Nancy Altermatt, responded to questionnaires regarding plaintiff's activities of daily living.  Her responses were similar in many categories and when considered as a whole, were notable as follows:  Plaintiff sleeps 5-8 hours a night, regularly socializes, shops weekly, drives daily or at least two-three times a week, plays cards weekly for a hour, prepares meals daily, takes care of his personal needs daily, and does some housekeeping on an occasional basis.  He takes a lot of pain medication.  By April 2003, plaintiff's condition had worsened because of heavy swelling in his legs, hands, and abdomen, and his doctors were increasing his pain medication.

**Vocation Expert (VE) Testimony**.

VE Gary Jesky testified that plaintiff's past relevant work was as a forklift driver at a medium, semiskilled level, and warehouse work at a medium, unskilled level.

The ALJ asked the VE to opine whether plaintiff could perform any of his past relevant work based on a hypothetical

9 - OPINION AND ORDER

that includes a 52 year old male with a high school education who
is able to(1) lift and carry 20 lbs occasionally and 10 lbs
frequently, (2) sit, walk, and stand for six hours in an eight-
hour day, (3) occasionally crawl, work overhead, an push and pull
with the upper extremities, (4) occasionally use ladders, ropes,
and scaffolds, and (5) perform one, two, three step work.  He
should, however, avoid concentrated heat, humidity, hazards, and
moderate vibrations.

The VE opined plaintiff would not be able to perform his
past work, but would be able to perform jobs at the light
exertion level that are available in significant numbers at the
local and national level, such as extruding machine operator, and
courier.  When the ALJ added to the hypothetical a pain threshold
that would cause plaintiff to be unable to work at least two days
per month on a regular, recurring basis, the VE opined that
plaintiff would not be able to maintain competitive employment.

**Medical Evidence from Treating Physicians.**

David C. Koon, M.D - Rehabilitation Medicine.

In early November 2001, Dr. Koon began treating plaintiff
for complaints of increasing neck pain over a two year period,
radiation of pain down both arms, mild back achiness, and
tingling/numbness in the bi-lateral thigh area.  After the first
visit, Dr. Koon recommended plaintiff engage in light work only,
lifting no more than 10 lbs, and avoiding excessive bending,

10- OPINION AND ORDER

lifting or twisting, pending a cervical MRI evaluation.  Dr. Koon
also refilled plaintiff's prescription for Percocet.

The MRI revealed some central disc bulging at C5-6 without
focal lesion or impingement of the nerve root.  In late November,
plaintiff complained of radiation down the left arm and Dr. Koon
noted decreased reflexes throughout plaintiff's left arm but
normal strength.  Dr. Koon reiterated the functional limitations
he had recommended before the MRI was performed and ordered
physical therapy.

In December 2001, plaintiff stated his pain level had
stabilized.  Dr. Koon recommended a transition from physical
therapy to a home exercise program and he released plaintiff for
light work with the same functional limitations previously
described.

In February 2002, Dr. Koon noted plaintiff's pain had
stabilized, physical therapy had been helpful, and although
plaintiff was not in acute distress, he continued to have
significant pain on the right side.  Dr. Koon continued to
prescribe Percocet three times a day.

In March 2002, plaintiff again complained of neck pain but
told Dr. Koon the pain level was stable.  Dr. Koon raised
plaintiff's lifting capacity to 20 lbs.

In April 2002, Dr. Koon raised plaintiff's work capacity to
medium, modified, and increased his lifting capacity to 40 lbs

occasionally and 15 lbs frequently.

In May 2002, plaintiff complained of increased left arm and neck pain, which was exacerbated when he looked up and down, and when he curled his biceps.  The pain was interrupting his sleep. Dr. Koon repeated his modified duty limitation, but decreased the lifting limit to 20 lbs occasionally and 10 lbs frequently.

Dr. Koon ordered a second MRI, which was performed in June 2002.  It revealed improvement of the disc bulge at C5-6. Plaintiff, however, stated that, after he lifted a trash can, he began having radiating pain down the left arm, causing the most discomfort in his anterior elbow and biceps tendon, with numbness and tingling in three fingers of his hand.  He also had subjective complaints of numbness throughout the C5-7 region.

Dr. Koon was "not exactly sure what is going on".  He also "want[ed] to see the appropriateness of long-term narcotics in this patient and if there are any other diagnostics that need to be done."

In July 2002, plaintiff complained the pain in his neck and left arm was worse.  He had received an epidural steroid injection that increased his pain and he was taking increased dosages of Percocet.  Dr. Koon maintained plaintiff's lifting limitation at 20 lbs and referred plaintiff to Michael Mason, M.D.

In his last report in September 2002, Dr. Koon reduced
plaintiff's lifting capacity to 10 lbs and placed him on modified
duty.

Michael Mason, M.D.- Neurosurgeon.

In August 2002, Dr. Mason noted plaintiff had full range
of cervical motion but was "quite uncomfortable with flexion,
extension, and especially with right lateral rotation."  Dr.
Mason ordered a cervical myelogram that revealed significant
cervical spondylosis at C5-7, bilaterally.  He suggested further
conservative therapy but cautioned plaintiff that he would
probably have to consider cervical decompression.

Gordon Johnson, M.D. - Internal Medicine.

In September 2002, plaintiff complained of a headache after
the myelogram was performed.  He also has a new complaint of low
back pain and jerks in his legs.  Dr. Johnson diagnosed likely
spinal headache from the myelogram, hypertension, and chronic
neck pain.  During the fall of 2002 Dr. Johnson continued to
treat plaintiff for hypertension and for a burning sensation and
numbness plaintiff felt in his thighs, which Dr. Johnson
diagnosed as probable neuralgia paraesthetica.  By January 2003,
the thigh discomfort had eased after plaintiff started wearing
looser underwear.

During the Spring of 2003, Dr. Johnson treated plaintiff for
hypertension.  Plaintiff complained of pain and swelling in his

legs, which  Dr. Johnson treated with diuretics.   The treatment
helped but the underlying etiology remained unclear.   In April
2003, plaintiff had abdominal swelling.

In May 2003, plaintiff complained of an acute onset of
paralysis in one arm with no other sign or symptoms.   Dr. Johnson
considered carpal tunnel syndrome as a cause, but it would not
be so acute, and would not account for complete paralysis of
the arm.   He also considered malingering to be a possibility.
Dr. Johnson diagnosed diabetes mellitus for the first time.

In July 2003, Dr. Johnson noted plaintiff's diabetes was
under good control with diet but his hypertension was still
not at the target level.   Plaintiff continued to have numbness,
probably secondary to his cervical disease, as well as plantar
fasciitis, for which Dr. Johnson prescribed stretching exercises
and multiple footwear inserts.

Dr. Johnson also requested tests to determine the cause of
plaintiff's leg pain.   He noted a July 2003 ultrasound test
suggested mild proximal iliac occlusive disease somewhat more
severe on the right than the left."  Dr. Johnson then recommended
a multilevel peripheral vascular study including a treadmill test
that the was done in August 2003.   The results suggested proximal
iliac occlusive disease in both legs, moderately so in the left
leg.

In March and April 2004, Dr. Johnson noted "we are concerned

14 - OPINION AND ORDER

a little bit about psychosomatic illness lingering."  He had
suspected for "awhile" that there was "a social component to
[plaintiff's] symptoms" and was "concerned about putting
[plaintiff] on disability."  He was also "concerned about the
amount of narcotic [plaintiff] is using without a lot of hard
evidence of a severe radiculopathy in his neck from the reports I
have reviewed."  He did agree with plaintiff that "he has
objective signs of disease" and further agreed that "he has
pretty profound peripheral edema at times and edematous hands
that are somewhat arthralgic."  Finally, Dr. Johnson explained
how he "could understand [plaintiff] being frustrated with being
seen now for over 2 years without a clear diagnosis and no clear
help with his symptoms."

        Plaintiff continued to treat with Dr. Johnson through at
least July 2005, for ongoing cervical disc disease, low back
pain, left leg numbness and pain, swelling and numbness in his
hands, diet-controlled diabetes, severe hypertension that was
often well-controlled with medication, and sleep apnea.

        <u>Mark Kallgren, M.D. - Pain Management Specialist</u>.
        <u>Mary K. Thompson, F.N.P. - Psychiatric Nurse Practitioner</u>.

        Dr. Kallgren and Nurse Practitioner Thompson treated
plaintiff for his neck, back, leg, and foot pain, as well as low
grade depression, from November 2002 through September 2003.  In
April 2003, Dr. Kallgren noted plaintiff's physical condition
appeared to be worsening.  Dr. Kallgren stated "[c]learly, in my

opinion, he is not capable of returning to his job, and I doubt
he is likely to be able to retrain in almost any field given the
number of medical problems and chronic pain that he has."

In June 2003, Nurse Thompson noted plaintiff's depression
was increasing.  She also noted there were no "aberrant
medication behaviors" and "he has been very compliant with his
medications."

**Consulting Physician/Psychologist Medical Evidence**.

The Commissioner did not have plaintiff examined, but relied
on opinions of consulting doctors who reviewed medical records.

Mary Ann Westfall, M.D. - Physical Medicine/Rehabilitation.
Richard Alley, M.D. - Family Medicine.

In December 2002 and again in July 2003, Dr. Westfall opined
plaintiff had the residual functional capacity to lift 20 lbs
occasionally and 10 lbs frequently, stand, walk, and sit six
hours in an eight-hour workday.  He should only occasionally
reach in all directions.  Dr. Westfall found no other physical
limitations.  She acknowledged her findings were significantly
different from those of plaintiff's treating physicians, and
explained that she gave Dr. Koon's opinions only partial weight
based on her opinion that the medical evidence, when coupled with
plaintiff's activities of daily living, are contradictory.  She
concluded plaintiff's description of his limitations was only
partially credible.

In December 2003, Dr. Alley found essentially the same

16- OPINION AND ORDER

physical limitations as Dr. Westfall, but he also found plaintiff should only occasionally balance and crawl, avoid concentrated exposure to extreme heat and humidity, and hazards, and avoid moderate exposure to vibration.  He agreed with Dr. Westfall's reasons for reaching a significantly different opinion than the treating physicians.

Dorothy Anderson, Ph.D.- Psychologist.

Dr. Anderson concluded from her review of the medical records that plaintiff suffers from non-severe depression and has mild difficulties in social functioning and maintaining concentration, persistence, or pace, in a work setting.  She found the records reflect "claimant's statements indicating inability to work due to mental issues to be minimally credible."

**DISCUSSION**

**Rejection of Treating Physician's Disability Opinion.**

**Standard.**

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

> Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the

17- OPINION AND ORDER

> record.  This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings.  The ALJ must do more than offer

his conclusions.  He must set forth his own interpretations and
explain why they, rather than the doctors', are correct.

Id. (Internal citations omitted).  In turn, "the opinions of

examining physicians are afforded more weight than those of non-

examining physicians."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.

2007).

**The ALJ's Finding.**

Here, the ALJ gave "great weight" to the consulting

physicians' opinions regarding plaintiff's purported lack of

credibility, and little weight to the opinions of treating

physicians, Dr. Koon and Dr. Kallgren,

Dr. Koon.

The ALJ rejected Dr. Koon's opinion as to plaintiff's

physical capacities.  Specifically, the ALJ gave great weight to

the consulting physicians' opinions as to plaintiff's lifting

capacity, noting Dr. Koon's opinion ranged from a maximum

capacity of 10 lbs to 40 lbs over a period of time, before his

final report in October 2002 that restricted plaintiff to lifting

no more than 10 lbs.  He also noted plaintiff acknowledged in a

"Fatigue Questionnaire" in November 2002, that he could lift 30

lbs occasionally.  Finally, he discounted Dr. Koon's opinion that

plaintiff was limited in his ability to kneel or bend in the

18 – OPINION AND ORDER

absence of objective evidence in that regard.  The ALJ opined
that more recent medical evidence did not support Dr. Koon's
limitations.

Dr. Kallgren.

Although plaintiff does not address the subject, the ALJ
also rejected Dr. Kallgren's opinion that plaintiff probably
could not retrain in any field given his multiple medical
problems because plaintiff's "complaints of pain are likely
overstated and not fully credible."

The ALJ also took note of Dr. Johnson's reference to
possible "psychosomatic" and "social" issues regarding the extent
of plaintiff's pain.

**Analysis.**

After reviewing the medical record in its entirety, I am
persuaded the ALJ has failed to adequately support his acceptance
of the opinions of consulting physicians that plaintiff can
perform light work over the opinions of treating physicians who
have opined to the contrary.

The consulting physicians, without benefit of any personal
interaction with plaintiff, were of the opinion that plaintiff
was either not credible at all or was only partially credible.
None of plaintiff's treating physicians offered such an opinion
over a period of four years.  Although Dr. Johnson, following one
visit, made a passing reference to "malingering," it was limited

19 - OPINION AND ORDER

to plaintiff's complaint of possible carpal tunnel syndrome, and was at best, a hypothesis, not a diagnosis. Moreover, Dr. Johnson acknowledged there were objective signs of the swelling in plaintiff's hands. Dr. Johnson appears to have been frustrated with the "enigma" of the extent of plaintiff's discomfort arising from the swelling, pain, and numbness in his lower extremities. Nevertheless, there was objective evidence of proximal iliac occlusive disease in both legs, more severe in the left than the right, that could account for the symptoms. It is also noteworthy that, although plaintiff had ongoing difficulties with his medications that were prescribed to treat his hypertension and diabetes, and Dr. Johnson expressed concern in particular regarding the amount of narcotic pain medication he was taking, Nurse Practitioner Thompson noted there was no evidence of drug-seeking behavior by plaintiff.

Accordingly, I conclude the ALJ erred in rejecting the opinions of Dr. Koon and Dr. Kallgren.

**Rejection of Lay Witness Testimony.**

**Standard.**

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

**The ALJ's Finding.**

Contrary to plaintiff's contention, the ALJ did not reject the evidence offered by lay witness Nancy Altermatt regarding plaintiff's daily activities.  Although he gave little weight to the evidence because he found she was not in a position to observe plaintiff for a significant portion of the day, he also found the reports to be "generally credible."

**Analysis.**

I agree with the ALJ that the lay witness evidence, standing alone, does not establish disability.  I find, however, the evidence generally supports plaintiff's description of his daily living activities.

**Failure to Include All Limitations in the RFC**.

**Peripheral Vascular Disease**.

Plaintiff contends the ALJ failed to consider plaintiff's limitations arising from his diagnosis of peripheral vascular disease in formulating plaintiff's RFC.  The ALJ reasoned that contradictory statements by plaintiff regarding the extent to which he walks on a daily basis undermined his credibility regarding such limitations.  Specifically, the ALJ noted in October 2004 and July 2005, plaintiff reported he was able to, or at least, needed on occasion, to walk up to six miles a day. The ALJ also noted that in October 2002 Social Security personnel did not witness plaintiff encountering any difficulties in

movement when he was in their office.

Contrary to the ALJ's findings, separate medical tests in 2003 substantiate that plaintiff, objectively, suffers from peripheral vascular disease, mostly but not entirely limited to the left leg, that could account for plaintiff's complaints of numbness and pain in his legs.

The record does not reflect the ALJ, in formulating his hypothetical to the VE, took into account any limitations relating to plaintiff's lower extremities.

**Depression.**

Contrary to plaintiff's argument, the ALJ did include a limitation in the RFC that plaintiff would experience mild difficulties in a work setting maintaining concentration, persistence, or pace.

**Analysis**

On the record, the court concludes the ALJ erred in failing to address limitations in the RFC arising from plaintiff's peripheral vascular disease.  As a consequence, the ALJ's hypotheticals to the VE based on the incomplete RFC were also flawed.[1]

---

[1]  For this reason, I need not resolve plaintiff's remaining challenges to the methodology used by the VE to determine whether there were jobs in the national economy that plaintiff could perform.

22- OPINION AND ORDER

**<u>REMAND</u>**

The court has the discretion to remand this matter for further proceedings or to remand for an immediate payment of benefits. Based on the record as a whole, the court concludes a remand is appropriate to allow for further examination by a physician specializing in vascular diseases regarding the extent of plaintiff's peripheral vascular disease and specific limitations, if any, that are attributable to the disease. In addition, the ALJ shall formulate a hypothetical for a vocational expert that includes the physical limitations found by Dr. Koon.

**<u>CONCLUSION</u>**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings in accordance with this Opinion and Order.

IT IS SO ORDERED.

DATED this 6  day of February, 2008.


_/s/  Malcolm F. Marsh_____
MALCOLM F. MARSH
United States District Judge

23 – OPINION AND ORDER